---
Ward *v.* Howe.

---

---

## WARD *v.* HOWE.

The doctrine of *Ward* v. *Cole*, 32 N. H. 452, affirmed.

38  35
71  467

Where the holder of a promissory note, residing in Massachusetts, receives from one of the makers residing in this State a new note, signed by himself alone, which is given in Massachusetts, and the amount of which is there indorsed upon the first, the question whether the new note was or not a note received *pro tanto* in payment of the old, is to be decided according to the law as held in that State.

The rule there held is, that the new note is presumed to have been received in payment, unless the contrary is shown.

The presumption, which, according to the rule there held, arises in such case, is rebutted by proof of the facts that the new note was given for the purpose of being discounted at a bank, and that the maker agreed to bear the expense of going to the bank to get it discounted.

ASSUMPSIT, upon a promissory note signed by the defendant's intestate, and three other persons. This is the same action reported as *Ward* v. *Cole*, 32 N. H. 452.

The facts stated in that case constitute a part of this, and in addition the following appear: The note declared on has several indorsements upon it, the last being "May 25, 1853; received one hundred dollars." The plaintiff admited the validity of all these indorsements except this last; and to prove *that* not to have been a payment, introduced the depositions of Ebenezer Torrey, and Stephen Jewett, one of the signers of the note. No other evidence was produced upon this point. Torrey testified that he was cashier of the Fitchburg Bank, and that a note for one hundred dollars, bearing date May 12, 1853, signed by Jewett, payable to the plaintiff, or order, in three months, and indorsed by him, was discounted by the bank about the time of its date; which note was paid to the bank at its maturity by the indorser; Jewett, the maker, in the mean time having failed in business.

Jewett testified that the indorsement of one hundred dollars on the note in suit was made by himself, in Ward's presence, on account of the one hundred dollar note given by him to Ward; that Ward a short time before had requested him to make a payment on the note in suit; that the one hundred dollar note was given as such payment, and that it was agreed between them when he gave it that he would pay the expense of going to Fitchburg to get it discounted; that there was no other conversation between them at the time of giving the note, upon the subject of its being received in payment, than above stated; that Ward produced the note in suit, and he, Jewett, made the indorsement, putting the date of the indorsement May 25 instead of May 12, by mistake, or designedly for the purpose of adjusting the interest, he did not recollect which; and that the one hundred dollar note was given and the indorsement made at Ward's house, in Ashburnham, Massachusetts, where he resided; he, Jewett, then living in this State; that he had never paid the one hundred dollar note, or been called on to pay it, and had not seen it since it was given.

It is agreed that such judgment shall be rendered as the court may order.

*Wheeler & Faulkner,* for the plaintiff.

1. The decision in *Ward* v. *Cole,* 32 N. H. 452, disposes of the question as to the statute of limitations. *Kendrick* v. *Kimball,* 33 N. H. 482, neither overrules nor conflicts with that decision.

2. As to the one hundred dollar note, the receipt of it is not payment of the preëxisting debt, unless there is an express agreement to that effect, or the circumstances are such that an agreement may reasonably be inferred. This is the well settled doctrine of this State. *Wright* v. *Crockery Ware Co.,* 1 N. H. 281; *Elliot* v. *Sleeper,* 2 N. H. 527; *Jaffrey* v. *Cornish,* 10 N. H. 505; *Johnson* v. *Cleaves,* 15 N. H. 332; *Smith* v. *Smith,* 27 N. H. (7 Fost.) 244; *Thompson* v. *Briggs,* 28 N. H. (8 Fost.) 40; *Odell* v. *Foster,* 30 N. H. (10 Fost.) 540.

The English decisions are uniform upon this point, and in conformity with this doctrine. *Ward* v. *Evans,* 1 Ld. Raymond 928; *Clark* v. *Mundal,* 1 Salk. 124; *Keardlake* v. *Morgan,* 5 T. R. 513; *Overson* v. *Morse,* 7 T. R. 64; *Puckford* v. *Maxwell,* 6 T. R. 52; *Tapley* v. *Masters,* 8 T. R. 451; *Camidge* v. *Allenby,* 6 B. & C. 373; *Thompson* v. *Percival,* 5 B. & Ad. 925; *Brown* v. *Kewley,* 2 B. & Pul. 518.

The uniform current of decisions in New-York supports the same doctrine. *Tobey* v. *Barber,* 5 Johns. 72 *Schemerhorn* v. *Laines,* 7 Johns. 313; *Johnson* v. *Weed,* 9 Johns. 310; *Olcott* v. *Rathbone,* 5 Wend. 490; *Hughes* v. *Wheeler,* 8 Cow. 77; *Muldon* v. *Whitlock,* 1 Cow. 290; *Elwood* v. *Deifendorf,* 5 Barb. S. C. 398; *Van Epps* v. *Dillage,* 6 Barb. S. C. 244.

Indeed, in England, the doctrine is stated in stronger terms than those adopted by our courts. In *Puckford* v· *Maxwell* it is said, "if a party agree to take a note as payment, and to run the risk of its being paid, that will be

considered as payment; but without such agreement the giving of the note is no payment." And in the New-York case, *Tobey* v. *Barber*, it is said to be a rule, well settled, that taking the note, either of the debtor or of a third person, for a preëxisting debt, is no payment unless it be expressly agreed to take it as payment, and to run the risk of its being paid.

3. The testimony of Jewett negatives the idea of an express agreement to receive the note in payment. If there were no evidence of what transpired between Jewett and Ward, could the court reasonably infer such an agreement from the circumstances ?

Ward's conduct in allowing Jewett to indorse the amount of the small note on the larger one is not satisfactory evidence of such agreement. It is no stronger, to say the least, than the conduct of the collector, in *Jaffrey* v. *Cornish*, in crossing the tax ; of the cashier, in *Olcott* v. *Rathbone*, in surrendering the old note ; of the creditor, in *Johnson* v. *Cleaves*, in receipting his account, offering the note for discount, depositing it for collection, and putting it in suit at maturity ; or of the creditors, in *Smith* v. *Smith*, in receipting their account, and afterwards prosecuting the note against the estate of the deceased maker for allowance.

There was not only no express agreement to receive the note as payment, but there was also nothing in the transaction from which an agreement or understanding could be inferred. It is not even probable that Ward would discharge the obligation of four responsible debtors, payable on demand, with interest, on receipt of the note of one of those debtors, payable on time, without interest.

*Cushing*, for the defendant.

1. The acceptance of the promissory note of Jewett and its indorsement on the note, constituted a payment. As between themselves, joint debtors are to be considered

each as principals for his proportional part, and as sureties of the others for their parts. When, therefore, the creditor accepted the note of one of the debtors payable on time, he, to that extent, discharged the other debtors.

2. This whole transaction was governed by the law of Massachusetts. Both notes were made there and were payable there; and by the law of Massachusetts the negotiable note of one of several persons, equally liable, constitutes a payment, and therefore the others are discharged from their liability. *French* v. *Price*, 24 Pick. 18; *Cornwall* v. *Gould*, 4 Pick. 444; *Huse* v. *Alexander*, 2 Met. 157; *Butts* v. *Dean*, 2 Met. 76; *Reed* v. *Upton*, 10 Pick. 522; *Jones* v. *Kennedy*, 11 Pick. 125; *Walker* v. *Hill*, 8 Pick. 522; *Baker* v. *Biggs*, 8 Pick. 122; *Ilsley* v. *Jewett*, 2 Met. 168, 173; *Wood* v. *Bodwell*, 12 Pick. 268; *May* v. *Breed*, 7 Cush. 15.

3. The case of *Kendrick* v. *Kimball*, 33 N. H. 482, seems to us to show that Cole was not in such a sense a resident out of the State as to prevent the operation of the statute of limitations.

SAWYER, J.   The first question presented by the case, namely, whether the statute of limitations was suspended by the absence of the intestate from this State from the 5th of July, 1851, to the time of his death, in April, 1853, has once been considered and determined by this court, as reported in 32 N. H. 452. The case of *Kendrick* v. *Kimball*, 33 N. H. 482, has since been decided, and we are requested to review the decision heretofore made in this case, on the ground that the doctrine of *Kendrick* v. *Kimball* is irreconcilable with that decision, and consequently to be considered as overruling it. An examination of the two cases, however, clearly shows that the decisions are not conflicting or inconsistent with each other.

*Kendrick* v. *Kimball* is debt on a judgment recovered in this State. The defendant, at the date of the writ

in the original suit in which the judgment was rendered, was an inhabitant of the State, but became a non-resident before the service of the writ was completed by the leaving of a copy at his place of abode here. Notice of the pendency of the action was consequently given by publication under an order of court, agreeably to the statute. The question in that case was, whether the judgment rendered upon such publication of notice could be enforced by an action of debt founded upon it, in the courts of this State. The point decided was, that although the judgment was admittedly inoperative beyond the limits of the State, and could not therefore be enforced by an action of debt upon it in the courts of a foreign jurisdiction, yet in the State where it was rendered it was valid as a judgment, and could be enforced by a suit upon it. The whole extent of the doctrine of that case is, that where a creditor obtains a judgment against a non-resident debtor, without personal notice, by pursuing the statute mode of publication under an order of court, the judgment may be enforced by suit upon it against the debtor, on his return to this State, although it would not be valid in the foreign jurisdiction to which the debtor had removed, and would therefore be of no avail to the creditor, if, for the purpose of enforcing the payment of his debt, he should be compelled to follow the debtor with it into the foreign jurisdiction.

But the former decision in this case was, that the absence of the debtor from the State which will prevent the statute of limitations from running while the absence continues, must be such that personal service of the writ cannot be made upon the defendant by arrest, or by giving him in hand or leaving at his usual as well as last place of abode the summons or copy required to be served in order to constitute personal service; such service, in fact, as will give effect and validity to the judgment in the foreign as well as the domestic jurisdiction. It is expressly said by the judge, in delivering the opinion of the court, that the

plaintiff, if he had seen fit, might have obtained judgment by attaching the defendant's real estate during his absence, and giving notice by publication ; but that the opportunity to make such attachment and give such notice is insufficient to prevent the effect of the absence in interrupting the statute law.　What is required to prevent this effect of the debtor's absence from the State is the opportunity, notwithstanding the absence, to make such personal service as is necessary to give the court jurisdiction to render a judgment which shall be valid in all courts. This is the doctrine of the former decision in this case. It is quite obvious that the subsequent case of *Kendrick* v. *Kimball* is not inconsistent with it.

We can perceive no ground for repudiating the doctrine established by the former decision in this case.

The other question in the case is, whether the receipt by the plaintiff of Jewett's note for one hundred dollars, and the indorsement of the 25th of May, 1853, on account of it, constitute a payment upon the note in question.

If the one hundred dollar note was received as a payment, so much of the original debt is extinguished, not merely as against Jewett, but also as against the intestate. If, however, it was taken merely as further security for the debt, the liability of each of the signers of the original note is unaffected by it.　At the time of the indorsement the plaintiff, the payee of the note, resided in Massachusetts, and has ever since resided there.　The making and delivery of the note took place there, and the indorsement was made there.　There can be no doubt that the question is to be determined according to the law as it is held in that State where the transaction occurred.

The cases cited by the counsel for the defendant are uniform in support of the doctrine in Massachusetts, as the rule of that State, that where a promissory note is given on account of a preëxisting debt, it is presumed to be in payment, *pro tanto*, unless it was shown that there

Ward *v.* Howe.

was an agreement between the parties, or that circumstances existed from which it may be reasonably inferred that there was an agreement that it should not be received in payment. The doctrine in this State, and in most other jurisdictions is, that the presumption is the other way; that the note is not received in payment unless the proof shows affirmatively that there was an agreement that it should be so received, or that circumstances existed from which such an agreement may be inferred. If the question were to be determined according to the rule established here, it is quite clear that the one hundred dollar note must be held not to have been received as payment; and we think the same result is attained, upon the facts proved, under the Massachusetts rule. According to the decisions in that State, the giving of the note is merely *prima facie* evidence of payment, and the presumption that it was received as payment may be rebutted by proof that it was not so intended. The existence of circumstances from which it may be fairly inferred that the parties did not so intend, is sufficient, although it does not amount to proof of an express agreement. *Butts* v. *Dean,* 2 Met. 76.

In this case, the circumstances which appear in proof are, that Jewett, one of the four signers of a promissory note, then due, being called upon by the holder to make a payment upon it, furnished him with his individual note, payable on time, for the purpose of enabling him to raise the money upon it by a discount at the bank, and agreed to pay the expense of going to the bank to procure it to be discounted ; that the discount was obtained upon Ward's indorsement; the note, at maturity, taken from the bank by him, without payment by the maker, and that it is still held by him against Jewett, as his mere promise, in substance, to pay one hundred dollars towards the original note. Under these circumstances it cannot be supposed, if the proposition had been distinctly made to the parties at the time of giving the one hundred dollar note, to treat

Ward *v.* Howe.

it as a release and discharge of the original debt to that extent, whether Jewett ultimately paid this note or not, that Jewett would have claimed that result, or Ward assented to it, if claimed. The parties must have contemplated nothing more than the giving by Jewett of an additional security for so much of the debt, which Ward could use for the purpose of raising money upon at the bank, and which was to be accounted for on the old note only in the event that Jewett ultimately paid the new; and the indorsement upon the old is to be regarded as having been made, not for the purpose of giving to the receipt of the new the effect of a payment *pro tanto* upon the old, but merely to secure Jewett against a double liability upon the two.

This is the equitable view of the case, and it certainly is not to be regretted that when called upon to give effect to the rule of law of a sister State, somewhat at variance with our own, it may be done with the same result as if our own governed in the case, and at the same time consonant to equity.

Judgment for the plaintiff for the amount of the note declared on, without deduction on account of the indorsement of 25th May, 1853.